**INDIANA STATE DEPARTMENT OF HEALTH, Appellant–Respondent,**

v.

**LEGACY HEALTHCARE, INC., d/b/a New Horizon Developmental Center, Appellee–Petitioner.**

No. 29A05–0007–CV–308.

Court of Appeals of Indiana.

July 24, 2001.

Rehearing Denied September 14, 2001.

Karen M. Freeman–Wilson, Attorney General of Indiana, Jon Laramore, Deputy

Attorney General, Indianapolis, IN, Attorneys for Appellant.

William P. Tedards, Jr., Washington, DC, William E. Wendling, Jr., Campbell Kyle Proffitt, Carmel, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

The Indiana State Department of Health (the Department) appeals from an order of the Hamilton Superior Court (the trial court) granting summary judgment in favor of Legacy Healthcare, Inc., doing business as New Horizon Development Center (New Horizon). The sole restated issue in this appeal is whether the trial court erred in so doing.

We reverse.

New Horizon formerly operated an Intermediate Care Facility for the Mentally Retarded (ICF/MR) in Arcadia, Indiana.[1] Residents of New Horizon depended upon funds from the Indiana Medical Assistance Program (Medicaid) to support their care at that facility. Indiana may pay Medicaid benefits only to healthcare facilities that have been certified by the Department as meeting Medicaid health and safety rules. After certification, such a facility may obtain a contract, also called a "provider agreement," with the Family and Social Services Administration's (FSSA's) Office of Medicaid Policy and Planning (OMPP) and participate in the Medicaid program.[2] The Department conducts surveys to determine whether each facility participating in the Medicaid program provides quality care to its residents in compliance with Medicaid's standards and may certify, for up to twelve months, a facility that fully meets applicable requirements. *See* 42 C.F.R. § 442.109(a) (2000).

On November 20, 1995, the Department and OMPP entered into an Interagency Agreement in order to define the relationship and division of responsibilities between the two entities in the certification of ICFs/MR for participation in the Indiana Medicaid program. The 1995 version of the Interagency Agreement provided in pertinent part: "OMPP shall issue or terminate provider agreements in accordance with the certification directives *recommended* by [the Department]. . . ." *Record* at 135 (emphasis supplied). It further provided: "Upon determining the certification status, [the Department will] notify OMPP of certification status and *recommended* remedy." *Id.* at 136 (emphasis supplied).

On May 12, 1999, the Department and OMPP amended the Interagency Agreement. The amended agreement stated in pertinent part: "OMPP shall issue, renew, cancel, or terminate provider agreements *in accordance with certification findings issued by [the Department]. . . ." Record* at 90 (emphasis supplied). It further provided in pertinent part: "Upon determining the certification status and appropriate remedy(ies), *[the Department] will notify OMPP and the provider of certification status and any remedy(ies) imposed by [the Department]* in accordance with applicable federal rules and transmittals." *Id.* at 92 (emphasis supplied).

---

1. As the result of another action, the operation of New Horizon has been turned over to a receiver.

2. Federal law requires that each state designate a single agency to administer its Medicaid program. 42 U.S.C. § 1396a(a)(5) (1994). In Indiana, OMPP is that agency. Ind.Code Ann. § 12–15–1–1 (West 1994). Each state must also designate a survey agency for its Medicaid program. 42 U.S.C. § 1396a(a)(9) and (33) (1994). The Department performs these survey duties in Indiana. Ind.Code Ann. § 16–28–12–1 (West 1997).

From April 5 to 23, 1999, the Department performed a recertification and licensure survey at New Horizon and found the facility was out of compliance with conditions of participation. After a revisit from May 24 to June 3, 1999, surveyors again found the facility out of compliance with standards of participation. Accordingly, on June 25, 1999, the Department issued a Notice of Cancellation of certification. A cancellation date of September 1, 1999 was set. A complaint made to the Department prompted another survey of the facility, which was performed from July 12 to 21, 1999. During the July 1999 survey, the Department found that immediate jeopardy existed.

On July 21, 1999, the Department's enforcement manager for long-term care sent a letter to New Horizon's administrator regarding the immediate jeopardy at that facility. The letter stated in pertinent part:

RE: ORDER TO TERMINATE CERTIFICATION

Immediate Jeopardy at 15G669 706 W Main St–Arcadia, IN 46034

Dear [Administrator]:

To participate as a provider of services in the Medicaid program, an Intermediate Care Facility for the Mentally Retarded must meet all of the provisions of Title XIX of the Social Security Act and be in compliance with each of the Conditions of Participation established by the Secretary of Health and Human Services found in 42 [C.F.R.] 483.

FINDINGS

On July 21, 1999, a Complaint survey was completed at your facility by the Division of Long Term Care, Indiana State Department of Health, to determine if your facility was in compliance with Federal participation requirements for Intermediate Care Facilities for the Mentally Retarded participating in the Medicaid program. This survey found ... that immediate jeopardy exists. These deficiencies demonstrate failure to protect clients from bodily harm; failure to provide necessary physical or psychological care, attention or treatment resulting in gross neglect, and failure to protect clients from bodily harm or trauma.

The Division of Long Term Care staff has discussed with you the seriousness of the deficiencies and the need for you to achieve immediate compliance.

\* \* \*

In accordance with 42 [C.F.R.] 431.153(e)(ii) the Indiana State Department of Health offers the opportunity for an informal reconsideration by the Division of Long Term Care to be conducted prior to termination

. . . .

ORDER

Notice is hereby given to you, pursuant to I.C. 4–21.5–3–6, that your certification for participation in the Medicaid program as an Intermediate Care Facility for the Mentally Retarded is ordered terminated effective August 13, 1999.

The Division may consider rescission of this Order only if the determination is made, either at a follow-up survey or at an informal reconsideration[,] that the immediate jeopardy has been abated.

Once this Order is effective, and your certification is terminated, you may take steps to achieve compliance with the Medicaid requirements and reapply for participation as a provider of services under Title XIX of the Social Security Act.

*Record* at 69–71 (emphasis in original).[3]

On July 23, 1999, New Horizon initiated an administrative appeal and sought to

3. Based upon the Department's July 21, 1999 letter to New Horizon, OMPP notified New

have the July 21, 1999 order dismissed, arguing that the Department lacked the authority to terminate Medicaid certification. On August 23, 1999, Administrative Law Judge (ALJ) William D. Christen issued findings of fact, conclusions of law, and a recommended order. ALJ Christen referred to Cause No. M–162–98[4] and essentially determined that the Department lacked the authority to terminate New Horizon's Medicaid certification, stating in pertinent part:

> 5. On June 30, 1999, an appeals panel, authorized by and acting on behalf of the Executive Board of the ISDH, issued a Final Order in CAUSE NO. AP–M–162–98, which involved the same parties, that stated: "That the Department of Health does not have the authority to cancel Medicaid certification under the Interagency Agreement but may only recommend as the power to cancel rests with FSSA."

*Record* at 106. The ALJ concluded in pertinent part:

> Horizon in a letter dated July 30, 1999 that its provider agreement was being terminated. On August 11, 1999, New Horizon filed a petition for administrative review of the termination of its provider agreement and for a stay.
>
> 4. In Cause No. M–162–98, an earlier administrative proceeding involving the same parties as in this case, the Department ordered that New Horizon's participation in the Medicaid program as an ICF/MR be cancelled effective April 8, 1998. The order provided that New Horizon could later reapply for participation as a service provider under Title XIX of the Social Security program. New Horizon appealed the Department's order. In an order dated September 27, 1998, ALJ Cynthia Stanley determined that the Department lacked the authority under the November 20, 1995 Interagency Agreement to terminate New Horizon's Medicaid participation and vacated the Department's April 8, 1998 order to cancel New Horizon's Medicaid certification. The Department appealed ALJ Stanley's order to a three-person appeals panel. In a final

5. That the ORDER issued July 21, 1999 to terminate Medicaid participation is contrary to a FINAL ORDER of the Department/Division's Ultimate Authority wherein it has been ruled that the Department's authority under the agreement is to recommend as the power to Terminate/Cancel rests with FSSA.

*Id.* The ALJ's recommended order stated:

> IT IS RECOMMENDED THAT THE ORDER, ISSUED JULY 21, 1999, TO TERMINATE NEW HORIZON'S MEDICAID CERTIFICATION OR PARTICIPATION BE DISMISSED AS ISDH LACKS JURISDICTION.

*Id.*

In a letter dated August 31, 1999, Mary Louise Reynolds, the Enforcement Manager for the Department's Division of Long Term Care, notified New Horizon's Administrator that the Department was rescinding the order to terminate New Horizon's certification as of August 13, 1999.[5] The letter stated in pertinent part:

> order dated June 30, 1999, the appeals panel incorporated by reference all of ALJ Stanley's findings of fact and conclusions of law, with the exception of Conclusion of Law # 29, which stated that the Department did not have grounds to even recommend that FSSA terminate New Horizon's Medicaid participation. The appeals panel determined that the record failed to support Conclusion of Law # 29. The appeals panel further determined "[t]hat the Department of Health does not have the authority to cancel Medicaid certification *under the [November 20, 1995] Interagency Agreement* but may only recommend as the power to cancel rests with FSSA. . . ." *Record* at 201 (emphasis supplied). Based upon an agreement of the parties, ALJ Stanley issued a recommended order dismissing the proceedings without further evidence. The parties did not appeal from the final order in Cause No. M–162–98.
>
> 5. The Department did not bring the August 13, 1999 letter to this court's attention. In addition, the Department erroneously repre-

RE: Rescind Order to Terminate Certification

15G669 706 W Main St

Dear Robert Owens [Administrator of New Horizon]:

Following the review of the information received at the follow-up survey completed August 13, 1999, the Division of Long Term care has determined that the facility located at 706 W Main St, has met the requirements as an Intermediate Care Facility for the Mentally Retarded under Title XIX of the Social Security Act. Therefore, the 23 day termination action has been abated. *However, standards were still out and the cancellation date is now September 1, 1999 as your [sic] were notified in the letter dated July 21, 1999 [sic, June 25, 1999?].*

*Record* at 204 (emphasis in original).[67]

In a letter dated September 2, 1999, the Department again notified New Horizon that its certification for participation in the Medicaid program as an ICF/MR should be cancelled effective September 1, 1999 because the Department's survey inspections showed that New Horizon did not meet program standards. The Department also notified New Horizon that it would forward the letter to OMPP with a recommendation that OMPP terminate New Horizon's Medicaid provider agreement. The Department advised New Horizon that it must file a request for review with the Department by September 19, 1999 in order to preserve its appeal rights of the decertification decision. New Horizon did not appeal the Department's September 2, 1999 decision. In a letter dated September 9, 1999, OMPP notified New Horizon that it had accepted the Department's recommendation and that New Horizon's Medicaid provider agreement for participation in the Medicaid program as an ICF/MR was terminated effective September 1, 1999. New Horizon filed an administrative appeal of OMPP's September 9, 1999 decision to terminate its provider agreement. Because the provider agreement was terminated, Indiana was required to eventually cease paying Medicaid funds to New Horizon for eligible residents.[8]

Despite the August 31, 1999 letter rescinding the order to terminate certifica-

---

sented in its brief filed with this court that New Horizon's decertification was the result of immediate jeopardy to residents.

6. After the Department determined that the immediate jeopardy had been abated, OMPP filed a motion requesting that the petition for review of the termination of New Horizon's Medicaid provider agreement be dismissed with prejudice. On February 14, 2000, ALJ Jerry L. Colglazier granted the motion to dismiss and ordered that the appeal be dismissed with prejudice.

7. There is also an issue whether the appeal of the July 21, 1999 order is moot because of the Department's August 31, 1999 order rescinding the order to terminate New Horizon's certification. However, because of the importance of the issues before us, we have not asked the parties to address the mootness issue and we will decide the issues presented.

8. Neither party adequately set forth all the facts necessary for a proper review of this case, as required by Ind. Appellate Rule 46. Hence, our review was unnecessarily made more difficult. In addition, the Office of the Attorney General, as attorneys for the Department (Appellant), did not note, in its Notice of Appeal filed pursuant to former Ind. Appellate Rule 2(C), that there was a potential related appeal known to the Department. The Appellant also did not, at any other time during the pendency of this appeal, inform this court in this case of the existence of the related appeal filed in *Indiana Family & Social Servs Admin., et al. v. Legacy Healthcare, Inc., d/b/a New Horizon Developmental Center,* No. 29A04–0103–CV–85 (Ind. Ct.App. filed Jan. 31, 2001).

tion, on September 7, 1999, the Department filed objections to ALJ Christen's August 23, 1999 findings of fact, conclusions of law, and recommended order and requested review by a Department appeals panel. The appeals panel thereafter issued a final order reversing ALJ Christen's recommended order and ruling that the Department did have the authority to revoke New Horizon's Medicaid certification. The appeals panel concluded that:

2. The changes between the 1995 Interagency Agreement and the 1999 Interagency Agreement are significant. Pursuant to the plain language of the 1999 Interagency Agreement, the ISDH has responsibility for certification of Medicaid programs in health facilities, and for imposing remedies for decertification.

*Record* at 166. The appeals panel's final order stated in pertinent part:

IT IS HEREBY DETERMINED AND ORDERED that the Indiana State Department of Health does have the authority to terminate certification of Medicaid facilities.

*Id.* at 167.

New Horizon appealed the appeals panel's decision to the trial court and filed a motion for summary judgment, which the trial court granted in an order dated July 19, 2000. The trial court concluded that the Department's decision in Cause No. M–162–98 controlled this case and was res judicata as to the parties here. This appeal ensued.

■ In this appeal, the Department argues that it has the authority to decertify health care facilities when its surveys show that such facilities do not meet Medicaid health and safety rules. It claims that federal law requires that it decertify when it, as the survey agency, finds immediate jeopardy and that it has the authority to

decertify under state law. It claims that the Interagency Agreement also permits it to decertify New Horizon. The Department also argues that administrative res judicata does not apply in this case.

New Horizon argues that the issue is not whether the Department has the authority to survey facilities and determine compliance with Medicaid certification requirements. Rather, it argues that the issue is whether the Department "has the additional regulatory authority to issue an order terminating a facility's *participation* in the Medicaid program." Appellee's Brief at 1. It relies upon the trial court's res judicata determination.

As our supreme court recently noted, judicial review of a state agency's actions is limited:

While the legislature has granted courts the power to review the action of state government agencies taken pursuant to the Administrative Orders and Procedures Act, this power of judicial review is limited. A court may only set aside agency action that is:

(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(2) contrary to constitutional right, power, privilege, or immunity;

(3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(4) without observance of procedure required by law; or

(5) unsupported by substantial evidence.

While an appellate court grants deference to the administrative agency's findings of fact, no such deference is accorded to the agency's conclusions of law. *See* Ind.Code § 4–21.5–5–14(d).

*LTV Steel Co. v. Griffin*, 730 N.E.2d 1251, 1257 (Ind.2000) (some citations omitted).

In *Weiss v. Indiana Family & Soc. Servs. Admin., Div. Of Disability, Aging*

*and Rehab. Servs.,* 741 N.E.2d 398, 402 (Ind.Ct.App.2000), *trans. denied,* this court discussed the elements of administrative res judicata:

> When determining whether administrative res judicata (claim preclusion) applies, we examine whether (1) the issues sought to be estopped were within the statutory jurisdiction of the agency; (2) the agency was acting in a judicial capacity; (3) both parties had a fair opportunity to litigate the issues; and (4) the decision of the administrative tribunal could be appealed to a judicial tribunal. *Watson Rural Water Co. v. Indiana Cities Water Corp.,* 540 N.E.2d 131, 135 (Ind.Ct.App.1989), *trans. denied....* "The test generally applied when determining whether a suit is barred by claim preclusion is 'whether identical evidence will support the issues involved in both actions.'" *Bojrab v. John Carr Agency,* 597 N.E.2d 376, 378 (Ind.Ct.App.1992) (citation omitted).

As noted previously, the appeals panel's determination in Cause No. M–162–98 "[t]hat the Department of Health does not have authority to cancel Medicaid certification under the Interagency Agreement but may only recommend as the power to cancel rests with FSSA," *Record* at 201, was based upon language in the 1995 Interagency Agreement, which was amended effective May 12, 1999. The amended Interagency Agreement clarified that, pursuant to such agreement, the Department may do more than merely recommend that a facility be decertified; it has the power to actually decertify ICF/MRs when appropriate under federal law. Because OMPP and the Department amended the Interagency Agreement after the appeals panel's decision in Cause No. M–162–98, identical evidence will not support the issues involved in both cases. Therefore, Cause No. M–162–98 does not have res judicata effect in this case.

■ We next consider the Department's argument that it has the authority to decertify health care facilities when such facilities do not meet Medicaid health and safety rules. In an order denying an emergency motion for grant of injunction pending appeal, the United States District Court in *Legacy Healthcare, Inc. v. Feldman,* No. IP 00–0306–C M/S, 2000 WL 1428667, at *5–6 (S.D.Ind. Mar. 8, 2000), *aff'd,* 248 F.3d 1158 (7th Cir.2001), explained the two-step process for a healthcare facility to become a Medicaid provider and the corresponding two-step process before such a facility loses its status as a Medicaid provider. It stated in pertinent part:

> [I]t is apparent that the FSSA has established a two-step process for a healthcare facility to become a Medicaid provider and a two-step process before it loses its status as a provider. Each step is taken in conjunction with, and represents a distinct decision by, a separate State agency. The first step is for the ISDH (the state's survey agency) to certify that the facility fully meets applicable requirements for participation in Medicaid. See 42 C.F.R. § 431.610(e)(1). A corresponding responsibility is for the ISDH to decertify a participating facility when it fails to meet those requirements. Once the certification step is accomplished, the OMPP takes the second step, exercising its discretion to enter a provider agreement with the ISDH-certified facility, which would entitle the facility to reimbursement for services rendered to a Medicaid-eligible patient. Although a certification for eligibility from the ISDH is a necessary condition for a facility to obtain a provider agreement with OMPP, it is not a sufficient one. See 42 C.F.R. § 442.12(a). The OMPP is not obligated to enter a provider agreement with a facility merely be-

cause it is certified as eligible by the ISDH. See 42 C.F.R. § 442.12(d) (if state Medicaid agency can show good cause, it may refuse to execute an agreement with a certified facility). If, however, the ISDH determines that a facility is no longer meeting the requirements of the Medicaid program and terminates its certification, the OMPP must terminate the provider agreement and follow the appeals procedure in 42 C.F.R. § 431.153. 42 C.F.R. § 442.117(b).

There is no question under federal law that, where appropriate, the Department has the authority to decertify ICF/MRs. In fact, the Department must terminate a ICF/MR's certification if it determines that such facility no longer meets the conditions of participation set forth in "subpart I of part 483 of [42 C.F.R. Ch IV]" or if "[t]he facility's deficiencies pose immediate jeopardy to residents' health and safety." 42 C.F.R. § 442.117(a)(1) and (2) (2000). Thus, the Department had the authority under federal law to decertify New Horizon when it determined both that New Horizon was out of compliance with conditions of participation and that the deficiencies at the New Horizon facility posed immediate jeopardy to the residents there.

The trial court erred in reversing the appeals panel's final order in this case, in which the panel determined that the Department has the authority to terminate the certification of Medicaid facilities, and in granting summary judgment in favor of New Horizon.

Judgment reversed.

BAILEY, J., and MATTINGLY–MAY, J., concur.